# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Michael Lather,                                  :       Case No.  3:09CV0048
                                                 :
          Petitioner           :       Judge Sara Lioi
                                                 :
      v.                                         :       Magistrate Judge David S. Perelman
                                                 :
Keith Smith, Warden,                             :
                                                 :       **REPORT AND RECOMMENDED**
                                                 :       **DECISION**
                                                 :
          Respondent           :

     In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality

of his conviction pursuant to a jury trial of one count of trafficking in cocaine, upon which he was

sentenced to seven years incarceration.

     On March 29, 2002, after the case was originally set for trial petitioner filed a motion in

limine seeking to prohibit the prosecution from offering evidence of "any other charged or non-

charged alleged drug dealings."  He also filed a motion to suppress any evidence obtained by

searches conducted pursuant to warrants based on informants he deemed not to have been credible

or trustworthy. He amended that motion on April 9 and 16, 2002, after which a motion hearing was

conducted on April 26, 2002.  After briefing, on May 14, 2002 the prosecution filed a motion to

reopen the suppression hearing so that further testimony could be heard pertaining to a videotape

1

recording of petitioner being informed of his *Miranda* rights during the booking process. That motion to reopen was granted.

The motion to suppress was subsequently denied by the trial court on October 24, 2002, and the jury trial commenced on November 21, 2002. On November 25, 2002 that trial ended in a hung jury, a mistrial was declared, and the case rescheduled for trial on January 28, 2003.

On the date of trial petitioner once again filed a motion in limine requesting that the trial court prohibit the introduction into evidence of "any other charged or non-charged alleged drug dealings." The trial court, having heard arguments on the motion, denied the motion on the record, the trial proceeded, and petitioner was found guilty.

The petitioner appealed his convictions to the Ohio Sixth District Court of Appeals, alleging the following six assignments of error:

    I.    The trial court erred to the prejudice of the Defendant in denying Defendant's motion to suppress.

    II.    The trial court erred to the prejudice of the Defendant in calling as the court's witness, Jeffrey Moore, at the request of the prosecuting attorney.

    III.    The ruling of the trial court denying the Defendant's motion for acquittal was erroneous and the verdict of the jury was against the manifest weight of the evidence.

    IV.    The trial court erred to the prejudice of the Defendant in admitting evidence regarding other unrelated acts regarding the alleged conduct of the Defendant that allegedly occurred subsequent in time to the arrest of the Defendant herein, which denied the Defendant a fair trial.

    V.    The conduct and demeanor of the trial judge during the Defendant's trial in the presence of the jury was prejudicial to the Defendant and denied the Defendant a fair trial.

2

> VI. The trial court erred to the prejudice of the Defendant in failing
> to hold a hearing to determine his ability to pay the mandatory
> drug fine when the trial court previously found the Defendant
> to be indigent for purposes of court appointed counsel.

On February 18, 2005, the court sustained petitioner's first assignment of error, declared the

remaining assignments of error to be moot, and remanded the case for a new trial. Petitioner's

motion to reconsider the ruling on his second and fourth assignments of error was denied on March

16, 2005.

While that motion was pending, on February 28, 2005, the State appealed the lower

appellate court ruling to the Ohio Supreme Court. The State also filed a motion to stay the

appellate court order for a new trial pending the outcome of the supreme court appeal. The motion

to stay was denied on March 3, 2005.

The State's amended notice of appeal and memorandum in support of jurisdiction alleged

the following two propositions of law:

> **Proposition of Law No. I:** A Miranda waiver is valid where after
> reading the warnings to the accused officers did not explicitly ask
> if defendant understood the rights, under circumstances that
> indicated the accused actually understood those rights and
> voluntarily waived them.
>
> **Proposition of Law No. II:** Admitting an exculpatory statement by
> a criminal defendant after he received Miranda warnings under
> circumstances that placed his waiver in question was harmless in
> light of the other evidence presented in favor of defendant's guilt.

On July 13, 2005 the supreme court accepted the appeal on the first proposition of law. In a

decision entered on September 13, 2006 the supreme court concluded: "We hold that a suspect

need not be asked directly whether he or she understands *Miranda* rights but that an understanding

waiver of those rights may be inferred from the totality the circumstances." The judgment of the

3

AO 72A
(Rev. 8/82)

lower appellate court was reversed, and the case remanded to the appellate court for proceedings consistent with the determination that a valid waiver of *Miranda* rights had occurred and that the motion to suppress was properly denied.

On December 14, 2006 petitioner filed a motion with the state supreme court requesting that an order be issued directing the lower appellate court to rule on his second through sixth claims for relief raised therein, which that court had deemed as moot once it reversed his conviction based on his first assignment of error on the *Miranda* rights issue. On February 7, 2007 the supreme court granted the motion and "instructed [the Sixth District Court of Appeals] to consider Michael A. Lather's remaining assignments of error."

Petitioner's petition for writ of certiorari filed with the United States Supreme Court was denied on January 27, 2007.

Following remand, on May 18, 2007 the lower appellate court addressed the remaining five assignments of error, and overruled each of them, holding that petitioner was not prejudiced or prevented from having a fair trial, and affirmed the judgment of conviction.

Petitioner appealed that ruling to the Ohio Supreme Court alleging the following two propositions of law:

> **Proposition of Law No. I:** The trial court cannot call a witness, at the request of the State, pursuant to Evidence Rule 614, until the State has made a prima facie case against the Defendant.
>
> **Proposition of Law No. II:** Evidence regarding other unrelated acts regarding the alleged conduct of the Defendant that allegedly occurred subsequent in time to the arrest of the Defendant cannot be admitted when the charges, and all of the related evidence thereto, have been judicially resolved in favor of the Defendant.

On October 3, 2007 the supreme court denied petitioner leave to appeal and dismissed the appeal

4

as not involving any substantial constitutional question. Petitioner did not appeal this decision to

the United States Supreme Court.

On October 24, 2008 petitioner filed the instant petition, in which he raises the following

four claims for relief:

> **A.  GROUND ONE**: The Defendant's home and alleged vehicle
> were illegally searched and evidence was illegally seized with
> falsehoods and misrepresentations throughout the probable
> cause affidavit, violation of *Miranda* rights, and voluntariness
> of statement.
>
> **Supporting FACTS**: Home and alleged vehicle were illegally
> searched and evidence illegally seized when the police officer
> making the probable cause statement employed
> falsehoods/perjury/and misstatements in the affidavit. The
> search warrant was invalid because the search warrant did not
> specify a place to be searched, nor the items to be seized. The
> police did not mention any particular items that would be found
> during the search, the affidavit in support of the search warrant
> failed to specify any items the search would produce concerning
> any crime, there was no facts, or information outlining why the
> police officer believed there would be any evidence of a crime
> (items), any drugs the Petitioner was alleged to have possessed
> were already in police custody, and those drugs were not in the
> Petitioner's control when the police confiscated them. Two
> occasions police questioned the Petitioner without properly
> advising him of Miranda; the Petitioner did not knowingly or
> intelligently waive Miranda rights; police lied at the suppression
> hearing.
>
> **B.  GROUND TWO:** Defendant was denied due process and a fair
> trial.
>
> **Supporting FACTS:** The State called Jeffrey Moore as a
> witness, after he testified that he did not tell police who had
> sold him the drugs he possessed when arrested. The prosecutor
> moved the trial court to call this witness as a court witness
> without the State of Ohio establishing a prima facie case of the
> witness's alleged inconsistency in statement versus testimony,
> so that the State of Ohio could impeach this witness. This

witness's statements were not presented to impeach, but to allow Mr. Moore to refresh his memory, which did not contain prior inconsistent statements and did not identify the Defendant as the person who sold the drugs. Three other persons testified that they never saw the Petitioner and Mr. Moore exchange drugs or money, and/or saw Mr. Lather (Petitioner) with any drugs. None of these three witnesses heard anything about drugs, or a transaction when Moore was around the Petitioner, thus denying the Defendant due process and a fair trial by the court's actions.

C. **GROUND THREE:** Insufficient evidence adduced during trial to find the Petitioner guilty beyond a reasonable doubt, therefore the trial court abused its discretion and erred by not granting the Petitioner's motion for acquittal pursuant to Crim.R. 29.

**Supporting FACTS:** There was insufficient evidence set forth by the State of Ohio during trial for reasonable jurists to find the Petitioner guilty of trafficking in crack cocaine, no witnesses saw the Petitioner in a drug transaction, heard him or anyone else speak of a drug transaction, no police saw, heard or recorded any drug transactions. Both the directly related witnesses that may have possibly provided the requisite evidence to convict the Petitioner, testified they never saw the Defendant make a drug transaction, heard or was involved with the Petitioner in a drug transaction, being Moore and Larry Wayne Jones. No statements either of these witnesses make or testimony, implicated the Petitioner if not for the improper evidence adduced during trial, the Defendant would not have been convicted by the jury. Only other acts evidence was established was used to convict the Petitioner. The elements of trafficking crack cocaine were never established beyond a reasonable doubt.

D. **GROUND FOUR:** Denial of fair trial and due process.

**Supporting FACTS:** The trial court allowed the State of Ohio to offer character evidence, other acts evidence of other non-convicted charges of drug trafficking charges in another county, charges that were later dismissed, and also based upon evidence that resulted in a hung jury after the State elicited testimony regarding the above-alleged crimes that the Defendant was

6

> never convicted, in the first trial of this matter. The Defendant
> was not convicted of these alleged drug crimes and the State did
> not present/does not have, substantial proof that these crimes
> were committed by the Defendant. R.C. 2954.59 and Evid.R.
> 404(B) were violated by the admittance of this evidence.
> Pursuant to Evid.R. 609, none of the charged, but not convicted
> crimes are admissible in trial. Evid.R. 402 states irrelevant
> evidence is not admissible. This issue covers the search of
> Defendant's apartment, his arrest in an unrelated Ottawa
> County case, and Mr. Lather's prior criminal convictions, which
> if he would have chosen not to testify is irrelevant, even if
> relevant all the above listed evidence is not admissible– the
> probative value is outweighed by the unfair prejudice.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).[1]

Respondent asserts that petitioner's third claim for relief must be dismissed as procedurally defaulted in light of petitioner's failure to raise it in his appeal to the state supreme court.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights. Granberry v. Greer, 481 U.S. 129, 133 (1987). Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court. Baldwin v. Reese, 541 U.S. 27 (2004); Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995). In so doing, state courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

---

[1] There are no issues of untimeliness in this case.

7

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326 (6th Cir. 1987), cert. denied, 532 U.S. 958 (2001). Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004). It is not enough to present the facts giving rise to the federal claim raised in habeas corpus; a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). Even if a claim is related, but distinct, the claim is nonetheless defaulted. Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim. Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982). For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim. Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and where petitioner would be barred from pursuing relief on that claim in the state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that

8

there would be no available state remedies to exhaust. Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief. See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978). However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal. Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 804, 808 (6th Cir. 2004).

This Court agrees with the respondent that although on direct appeal to the Ohio Sixth District the petitioner challenged the evidence relied upon to convict him, he did so in the context of the evidence having been against the manifest weight of the evidence, as opposed to having been against the sufficiency of the evidence.[2] The state appellate court, however, incorporated analysis of the sufficiency of the evidence into its opinion overruling petitioner's assignments of error. Nevertheless, in his appeal to the Ohio Supreme Court, he omitted the issue altogether. The claim of insufficiency of the evidence should have been raised on direct appeal, at the first opportunity to do so, or at least upon petitioner's appeal to the supreme court.

Petitioner would now be unable to pursue relief on that claim in the state courts in light of the fact that he could have raised it on direct appeal, but did not, which causes it to be barred by the doctrine of res judicata. State v. Perry, 10 Ohio St.2d 175 (1967). In turn, in light of the fact that the claim could have been but was not raised on direct appeal to the state supreme court,

---

[2] A claim that a conviction was against the manifest weight of the evidence presents a question of state law and dos not raise a question of violation of a federal constitutional right as would a claim of insufficiency of the evidence. Tibbs v. Florida, 457 U.S. 31, 47 (1982); Johnson v. Havener, 534 F.2d 1232, 1234 (6th Cir. 1976).

AO 72A
(Rev. 8/82)

petitioner would be barred from raising it in a delayed appeal or in a petition for post-conviction relief, which would in turn bar a decision on that claim upon habeas review. Leroy v. Marshall, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner having failed to demonstrate cause or prejudice for the procedural default, or evidence of a miscarriage of justice, petitioner's third claim for relief is procedurally defaulted and subject to dismissal.[3]

Turning to merits review of the remaining claims for relief, the role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to *any claim that was adjudicated on the merits in State court proceedings* unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(Italics added.)

The United States Supreme Court has held that the clauses "contrary to" and

---

[3]To the extent that petitioner may have articulated a claim of ineffective assistance of appellate counsel as cause for his failure to file this claim on appeal to the state supreme court, that argument is flawed in light of the fact that petitioner did not have the right to counsel in his discretionary appeal to the state supreme court. Halbert v. Michigan, 545 U.S. 605, 628 (2005), citing Wainwright v. Torna, 455 U.S. 586 (1982) and Ross v. Moffitt, 417 U.S. 600 (1974). Absent such right, any ineffective assistance on appeal to the state supreme court could not constitute cause for the aforementioned procedural default.

10

"unreasonable application of" as found in §2254(d)(1) have independent meanings; Williams v. Taylor, 529 U.S. 420 (2000), with the state court adjudication being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with the state court adjudication involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521. Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand. Id. See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

Petitioner's first claim for relief can be dissected into two sub-issues, with the first being that his Fourth Amendment rights were violated by reason of the alleged absence of probable cause to search his home and by reason of the fact that the police allegedly exceeded the scope of the search warrant while searching his home, and the second being that his Fifth Amendment rights were violated by an improper waiver of his *Miranda* rights and the subsequent use against him of

11

statements made consequent to the allegedly flawed waiver.

Full and fair litigation by the state courts of a Fourth Amendment claim based on alleged unconstitutional search and seizure precludes federal habeas corpus review of that claim. Kuhlmann v. Wilson, 477 U.S. 436 (1986); Stone v. Powell, 428 U.S. 465, 494 (1976). See also, Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000), cert. denied, 531 U.S. 1089 (2001) ("Petitioner's Fourth Amendment claim is not reviewable."); McQueen v. Scroggy, 99 F.3d 1302, 1332 (6th Cir. 1996), cert. denied, 117 S.Ct. 2422 (1997) ("[I]t is well settled that McQueen is precluded from presenting a Fourth Amendment claim . . . in a habeas action."); Marsack v. Howes, 300 F.Supp.2d 483, 493 (E.Dist.Mich. 2004) ("[T]he limitation on review of Fourth Amendment claims imposed by the Supreme Court in *Stone v. Powell*,...precludes relief on the basis of that Amendment."). Cf, Reedus v. Stegall, 79 Fed. Appx.93, 96 (6th Cir. October 14, 2003).

In order for a Fourth Amendment claim of this sort to be fully and fairly litigated, there must be a state procedural mechanism which provides the opportunity to raise the claim, and the actual presentation of the claim must not be impeded by a failure of such procedural mechanism. Riley v. Gray, 674 F.2d 522, 526 (6th Cir. 1982), cert. denied, 459 U.S. 948 (1982).  It has been held that the State of Ohio provides an adequate state procedural mechanism to raise a Fourth Amendment claim through Rule 12 of the Ohio Rules of Criminal Procedure, which provides for a pretrial motion to suppress, and then by providing the opportunity of a direct appeal of the ruling on motion to suppress. Riley v. Gray, supra at 526.

The petitioner employed the state procedural mechanism, as illustrated by the following summary by the state appellate court:

In his first assignment of error he argues that the court erroneously

12

denied his motion to suppress because the August 31, 2001 search warrant was not based on probable cause and, even assuming the warrant's validity, it did not give the officers authority to search for the scales. Appellant further contends that during the August 17 and August 31, 2001 incidents he was not properly advised of his *Miranda* rights.

We first note that when considering a motion to suppress, a trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366. When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's finding of fact if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to a trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. *State v. Klein* (1991), 73 Ohio App.3d 486, 488.

In reviewing whether the affidavit sufficiently supported the issuance of the search warrant, the role of the trial court and the appellate court is limited as follows:

"In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial judge nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George* (1989), 45 Ohio St.3d 325, paragraph two of the syllabus.

In determining whether and [sic] affidavit in support of a request for a search warrant provides sufficient information to satisfy the probable cause requirement, the issuing magistrate must determine whether, "***given all the circumstances set forth *** including the

13

'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability [that evidence will be found.]" Id. at paragraph one of the syllabus.

The affidavit in this case chronicled the events from appellant's arrest on August 17, 2001, through the following week. Included was information that the affiant/detective had been informed that appellant, prior to his arrest on August 17, 2001, had given a large amount of narcotics to his girlfriend living in Port Clinton, Ottowa County, Ohio.   According to the named informant, on approximately August 21, 2001, the narcotics were located in her apartment, in a Black & Decker box under her kitchen sink. The affiant stated that following a consent search of the informant's apartment, a detective recovered a Black & Decker box which contained a "large plastic wrapped package."   The package was tested and preliminary results indicated that the substance was crack cocaine in an amount greater than 500 grams.

The affiant further stated that he had been employed with the Ottawa County Drug Task Force for the past five and one-half years and, that based upon this experience, he knows that drug traffickers maintain certain records, secrete contraband, use certain electronic devices to store telephone numbers of customers, keep various drug paraphernalia for packaging, diluting, weighing and distributing drugs, and attempt to secret their profits.  Based on the foregoing, the affiant stated that he had reason to believe that appellant, at his Sandusky County residence, had the above property which was used in drug trafficking.

After careful review of the affidavit, we find that the judge had a substantial basis for determining that there was sufficient probable cause to issue a search warrant.  Appellant was recently arrested on a drug trafficking charge; and a large quantity of crack cocaine, allegedly his, was recovered in Ottawa County.

Also relating to the issue of the search warrant, appellant claims that the search warrant did not give the officers the authority to search for and confiscate, inter alia, three electronic scales.  Appellant contends that the officers were limited to the items listed on the face of the warrant.  The search warrant authorized seizure of the following items:

14

"a) letters, correspondences, records, or any documentation of any transactions, including but not limited to checking and savings accounts, bank statements, income tax returns, safety deposit keys and/or records, or records of purchases of any and all items. Also any record, correspondence or photographs that would connect the possessor with a criminal enterprise or to other members of a criminal enterprise. Instruments used to facilitate the criminal enterprise, including but not limited to cell phones and/or pagers and records indicating their purchase and or use in the enterprise. Fruits and/or evidence of the criminal enterprise, such as large sums of cash and other assets."

In *State v. Kobi* (1997), 122 Ohio App.3d 160, this court found that "[e]vidence not specifically described in a search warrant may be validly seized if, based on evidence known to the officers, the seized items were closely related to the crime being investigated or were instrumentalities of the crime." Id. at 171, citing *State v. McGettrick* (1988), 40 Ohio App.3d 25, 29.

In this case, the criminal enterprise under investigation was drug trafficking. Digital scales are commonly used as instrumentalities of drug trafficking. Accordingly, we find that the officers did not seize items beyond the scope of the search warrant.

As the foregoing illustrates, the petitioner made full use of the state procedural mechanisms available to raise his claim of violation of his Fourth Amendment rights, and there is no evidence that presentation of his claim was impeded by the failure of such mechanism. Consequently, the first sub-issue within petitioner's first claim for relief is without merit.

In petitioner's second sub-issue within his first claim for relief, he argues that his Fifth Amendment rights were violated by an improper waiver of his *Miranda* rights and the subsequent refusal of the trial court to suppress statements made consequent to the allegedly flawed waiver.

An individual in police custody must be warned prior to interrogation of his or her right to remain silent, that if statements are made they may be used against him or her, and that he or she has the right to counsel, either appointed or retained, so as to protect the individual's privilege against

15

self-incrimination as guaranteed by the Fifth Amendment of the United States Constitution. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). Accord, Dickerson v. United States, 530 U.S. 428, 435 (2000); Stansbury v. California, 511 U.S. 318, 322 (1994); United States v. Myers, 123 F.3d 350, 359 (6th Cir. 1997).

*Miranda* rights are subject to waiver provided that it is rendered voluntarily, knowingly, and intelligently, without coercion and with full cognizance of the consequences of such waiver as well as the attributes of the right being waived. Moran v. Burbine, 475 U.S. 412, 421 (1986); Edwards v. Arizona, 451 U.S. 477, 482 (1981); Machacek v. Hofbauer, 213 F.3d 947, 954 (6th Cir. 2000). The totality of the circumstances surrounding such waiver is considered in order to determine whether a valid waiver has occurred, see, Moran, supra at 421; Abela v. Martin, 380 F.3d 915, 928 (6th Cir. 2004), Seymour v. Walker, 224 F.3d 542, 553-554 (6th Cir. 2000), which necessitates consideration of the following factors:

> (1) police coercion; (2) length of interrogation; (3) location of interrogation; (4) continuity of interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and (8) whether the suspect was advised of *Miranda* rights.

Abela, supra at 928 (citing Withrow v. Williams, 507 U.S. 680, 693-694 (1993)). The first element, police coercion, has been deemed as a pre-requisite to finding that a confession consequent to waiver is involuntary. Ibid.

A valid waiver can exist absent a signed waiver form. North Carolina v. Butler, 441 U.S. 369, 375-376 (1979); Seymour, supra at 554.

In the context of a federal habeas corpus court reviewing a state court determination as to validity of waiver of *Miranda* rights, it must be determined whether the state court's determination

that petitioner's waiver was valid was contrary to, or an unreasonable application of, clearly established federal law, warranting relief in federal habeas corpus. In making that determination it has been held that "Subsidiary factual questions in determining the voluntariness of a statement to police...are entitled to the presumption of correctness accorded to state court findings of fact." Miller v. Fenton, 474 U.S. 104, 112 (1985). One such subsidiary factual question is whether a criminal defendant understood the reading of *Miranda* rights:

> Whether a defendant understood his *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent. Thus, on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows otherwise by clear and convincing evidence. See *Valdez v. Ward*, 219 F.3d 12222, 1231 (10th Cir. 2000). Williams has not provided any further evidence, clear and convincing or otherwise, to rebut the findings by the Michigan Court of Appeals that he understood the rights that were read to him. That court did not err in concluding the Williams knowingly, intelligently, and voluntarily waived his *Miranda* rights prior to giving his statement.

Williams v. Jones, 117 Fed.Appx. 406, 411-412 (6th Cir. 2004) (unpublished). See also, Lango v. Lafler, Case No. 06-CV-12228, 2009 U.S.Dist. LEXIS 8455, *9 (E.D.Mich. 2009); Terry v. Bock, 208 F.Supp.2d 780, 789 (E.D.Mich. 2002).

Turning to the present case, petitioner argues that his waiver of *Miranda* rights was not made knowingly, voluntarily, and intelligently by reason of the fact that after informing him of his rights the police failed to explicitly ask him whether he understood what had been read to him.

The Sixth District Court of Appeals originally ruled that the statements petitioner made to the police after his rights were read to him regarding digital scales found in the apartment should have been suppressed, in light of the fact that his *Miranda* rights were not properly waived:

17

In this case, Officer Woolf unequivocally testified that he neither asked appellant if he understood his rights nor asked appellant if he wished to waive his rights. Thereafter, Officer St. Clair, without apprising appellant of his rights, questioned him about the digital scales found in the apartment. We do acknowledge that appellant had prior contacts with the criminal justice system and had recently been arrested; appellant had also completed high school and some college. However, in order for appellant to, at minimum, impliedly waive his Miranda rights, it must be shown that he understood those rights. Such an understanding may not be presumed. Accordingly, we find appellant's first assignment of error well-taken, in part, as it relates to the August 311, 2001 interrogation.

In reversing that holding the Ohio Supreme Court held, in pertinent part:

A suspect in police custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona* (1966) 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Of course, one may waive or relinquish a known right. In the context of *Miranda*, the United States Supreme Court has explained the two aspects of waiver. "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine* (1986), 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410, quoting *Fare v. Michael C.* (1979), 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197.

We have also recognized that to meet the first aspect of a voluntary waiver, the waiver must be noncoercive. "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically

18

impaired because of coercive police conduct." *State v. Dailey* (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, at paragraph two of the syllabus. There is no coercion alleged in Lather's case. Instead, this case involves the second aspect of the waiver test, whether the waiver was made with full awareness.

The court of appeals reversed the conviction and remanded Lather's case for a new trial because it did not see explicitly evidence that Lather had understood his rights. The court held that understanding could not be "presumed." We have held, however, that a court may infer from the totality of the circumstances that a defendant voluntarily, knowingly, and intelligently waived his rights. *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 853; *State v. Gapen*, 104 Ohio St.3d 358, 2004 Ohio 6548, 819 N.E.2d 1047, P 52. The totality of the circumstances includes "'e.g., the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Dixon*, 101 Ohio St.3d 328, 2004 Ohio 1585, 805 N.E.2d 1042, P 25, quoting *State v. Eley* (1996), 77 Ohio St.3d 174, 178, 1996 Ohio 323, 672 N.E.2d 640. By definition of "totality," a court is to look to *all* of the evidence to determine a suspect's understanding, which can be implied by his conduct and the situation.

We have already held that *Miranda* warnings were proper and the confession was voluntary when a suspect was advised of his *Miranda* rights but never asked for a further explanation of them. *State v. Foust*, 105 Ohio St.3d 137, 2004 Ohio 7006, 823 N.E.2d 836, at P 71-72. In *Foust*, we found significant that the suspect appeared to be mentally alert, that he was not under the influence of drugs or alcohol at the time of the interview, and that he stated during the police interview that he had competed a GED course and had the highest score in his class. Id. at P73. The totality of the circumstances supported the validity of the waiver.

We also indicated in *State v. Murphy* (2001), 91 Ohio St.3d 516, 518, 2001 Ohio 112, 747 N.E.2d 765, that "[i]t is settled law that a *Miranda* waiver need not be expressly made in order to be valid. *North Carolina v. Butler* (1979), 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292. A court may infer a waiver from the suspect's behavior, viewed in light of all the surrounding circumstances."

In a situation similar to Lather's, the Court of Appeals for the Fourth Circuit concluded that the defendant had made an intelligent, knowing, and voluntary waiver even though he did not make a statement–written or oral–that he understood his rights. *United States v. Hayes* (C.A.4, 1967), 385 F.2d 375, 377-378. In reaching its conclusion, the court examined the totality of the circumstances surrounding the defendant's statements, relying on the lack of any allegation of coercion and the defendant's mental alertness at the time of his arrest.

Although it may not seem overly burdensome, and perhaps would be better practice, for law enforcement officers to ask specifically whether a suspect understands his or her rights, *Miranda* does not require it. A court must review the totality of the circumstances in the case to determine whether a waiver of rights has occurred. These circumstances may include the suspect's level of education, previous contact with police, and any other factor deemed by the court to be relevant, including the substance of the statement itself.

On the day he was detained at his apartment, Lather was 26 years old. He was well educated: he graduated from Fremont Ross High School in 1994, went to Terra Community College for two semesters, and majored in business management. Lather testified that he was familiar with the *Miranda* warnings. He had a criminal record and a number of contacts with law enforcement. He had been read his *Miranda* warnings two weeks before, had signed a form stating that he understood his rights and wished to waive them, and then had given a statement to police. On the day he was detained at his home, Lather was sober and did not ask for a further explanation or protest that he did not understand his rights. The statements that he did make were intended to exculpate him or at least lessen his culpability. From this evidence of the totality of the circumstances the trial court could infer that a valid waiver of Lather's *Miranda* rights had occurred. An understanding waiver of *Miranda* rights may be inferred from the totality of the circumstances.

In the present case, the state court's factual finding that petitioner fully understood what was being said and asked of him is presumed to be correct as the petitioner has not shown otherwise by clear and convincing evidence. In fact, petitioner has failed to articulate precisely how his

20

*Miranda* rights were improperly waived, stating only that there was a failure to inquire as to whether he understood his rights. As to whether the waiver of those rights was knowingly, intelligently, and voluntarily made, the fact that there was no evidence of intimidation, coercion, or deception on the part of the police, supports the state court's findings of voluntariness of the waiver. In addition, the totality of the circumstances, including petitioner's education, familiarity with the process (including the *Miranda* rights), sober mental state, absence of any request for clarification or protest regarding his understanding of his rights, and the fact that the statement made by him regarding the digital scales was made so as to exculpate him or to lessen his culpability, supported the state court's determination that petitioner entered an understanding waiver of his *Miranda* rights. That being so, the state court's determination that petitioner's waiver was valid was neither contrary to, nor was it an unreasonable application of, clearly established federal law. It follows that the second sub-issue within petitioner's first claim for relief fails upon merits review.

Petitioner's second and fourth claims for relief will be considered together as they each challenge the admission of evidence at trial.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994). As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus. Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000), cert. denied, 531 U.S. 1082 (2001). Stated differently, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the

21

fundamental right to a fair trial." Roe v. Baker, 316 F.3d 557, 567 (6th Cir. 2002). Under the AEDPA the states have wide latitude in ruling on evidentiary matters. Seymour v. Walker, 224 F.3d 542 (6th Cir. 2000), cert. denied, 532 U.S. 989 (2001). In considering petitioner's habeas corpus petition, a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Sanders v. Freeman, 221 F.3d 846 (6th Cir. 2000).

The United States Supreme Court has held that in order for the exclusion of evidence to be deemed unconstitutional such exclusion must have "significantly undermined fundamental elements of the accused's defense." United State v. Scheffer, 523 U.S. 303, 315 (1998). The Sixth Circuit Court of Appeals upheld the denial of a petition for writ of habeas corpus premised upon an allegation of unconstitutional exclusion of evidence and opined that the foregoing ruling by the Supreme Court should not be read to mean that a petitioner's constitutional rights are violated whenever a state court has excluded evidence believed by petitioner to have been at the heart of the defense, but rather stands for the proposition that such constitutional rights are violated "when a state court excludes important evidence on the basis of an arbitrary, mechanistic, or per se rule, or one that is disproportionate to the purposes it is designed to serve." Alley v. Bell, 307 F.3d 380, 393 (6th Cir. 2002). Where a state court makes an individual assessment as to the evidence and makes a ruling which complies with the foregoing, such as the state court did in Alley v. Bell, id. at 396, then the writ will not be granted.

In his second claim for relief the petitioner challenges the trial court's calling of a witness at

22

the request of the prosecution for the purpose of impeachment.  The state appellate court rejected petitioner's challenges to the admissibility of the testimony of Mr. Jeffrey Moore, holding in pertinent part:

> In appellant's second assignment of error he contends that the trial court erred when it called Jeffrey Moore as a witness at the request of the state.  Appellant contends that, contrary [to] Evid.R. 614, the issue was not one of impeachment; rather, it was "whether or not Mr. Moore's recollection was being refreshed or not" and that the prior statement did not even identify appellant as the individual who sold Moore the crack cocaine.
>
> Evid.R. 614(A) provides:
>
> "Calling by court.  The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine the witnesses thus called."
>
> A court's decision of whether or not to call its own witnesses is left to the court's "sound discretion." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404, N.E.2d 144.  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) Id. A trial court does not abuse its discretion by calling a witness as the court's witness when the witness's testimony would aid in determining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police. (Citation omitted.) *State v. Schultz*, 11th Dist. No. 2003-L-156, 2005 Ohio 345, P29.
>
> In the present case, the state moved to have the court call Moore as a witness for the purpose of impeaching him with his prior audio taped statement to police.  During direct examination, Moore denied identifying appellant as the individual who sold him crack cocaine; however, during the police interview he stated that a man named "Mike" sold him the crack cocaine and that Mike lived in Fremont even though his license plate indicated Cuyahoga County. Accordingly, we find that the trial court did not abuse its discretion when it called Moore as its witness.  Appellant's second assignment of error is not well-taken.

The petitioner challenges another evidentiary ruling in his fourth claim for relief, being that

23

the trial court erroneously denied his motion in limine, thereby permitting the prosecution to ask

witnesses about the petitioner's reputation for drug dealing and about his other drug charges, in

particular an August 31, 2001 arrest. The state appellate court upheld the trial court's rulings in this

regard, finding in pertinent part:

> In appellant's fourth assignment of error, he contends that the trial court erroneously permitted, denying his motion in limine, the state to question its witnesses regarding appellant's reputation for drug dealing, and that appellant had committed other charged and non-charged drug offenses in Ottawa County. In particular, appellant contends that the testimony of Detectives St. Clair and Woolf regarding his August 31, 2001 arrest was not relevant to the August 17, 2001 incident (which was the issue before the jury) and was prejudicial. On August 31, 2001, the Ottawa County Sheriff's Department executed a search warrant at appellant's residence and seized three digital scales.

> Initially, we note that questions regarding the admissibility of evidence are left to the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 Ohio B. 375, 510 N.E.2d 343, paragraph two of the syllabus. Evid. R. 403 provides that relevant evidence is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice ***." Pursuant to Evid. R. 404(B):

> "Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

> Similarly, R.C. 2945.59 provides:

> "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto,

24

notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

In the present case, the events in question occurred two weeks apart and the events of August 17, 2001 were included on the affidavit for the search warrant. The state presented the digital scales as evidence of appellant's identity, plan or intent that he was engaged in drug trafficking. Accordingly, we cannot say that the trial court abused its discretion when it denied appellant's motion in limine. Appellant's fourth assignment of error is not well-taken.

The foregoing rulings of the state appellate court are premised entirely on application of state law, as well as on factual determinations entitled to a presumption of correctness which can only be rebutted by clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998); McQueen v. Scroggy, 99 F.3d 1302, 1310 (6th Cir. 1996). Nothing in those rulings was contrary to rulings of the United State Supreme Court on a similar question of law, nor did the state courts decide the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Consequently, there is nothing in those rulings which would lead this Court to find that there has been an infringement of a right guaranteed by the United States Constitution. Petitioner's second and fourth claims for relief, therefore, are without merit.

Petitioner's third claim for relief having been procedurally defaulted, and his first, second, and fourth claims having failed on the merits, in light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits and it is, therefore, recommended that the petition be dismissed without further proceedings.

DAVID S. PERELMAN
United States Magistrate Judge

25

DATE:    September 4, 2009

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

AO 72A
(Rev. 8/82)